**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**MERAKI SOLAR, LLC and**
**MERAKI INSTALLERS, LLC,**

        **Plaintiffs,**               **CASE NUMBER:**
                                   **3:21-cv-00405-MCR-HTC**

**vs.**

**MIKOL ROSENBALM, DESREAL**
**AARON SANDOVAL and**
**STUART KIRKHAM,**

       **Defendants.**
_____/

## FIRST AMENDED COMPLAINT

COME NOW Plaintiffs, Meraki Solar, LLC and Meraki Installers, LLC (collectively, "Plaintiffs" or "Meraki"), by and through their undersigned counsel, and file their First Amended Complaint against Defendants, Mikol Rosenbalm, Desreal Aaron Sandoval and Stuart Kirkham (collectively "Defendants") seeking permanent injunctive relief, damages and other relief (including attorney's fees and costs) against Defendants and state:

## PARTIES, JURISDICTION AND VENUE

1.    This is an action for damages and for permanent injunctive relief.

The damages in this action exceed $75,000.00 exclusive of interest, costs and attorney's fees.

2.      Plaintiff Meraki Solar, LLC is a limited liability company having its principal place of business in Escambia County, Florida.

3.      Meraki Solar, LLC also maintains offices at a number of other locations identified herein.

4.      Plaintiff Meraki Installers, LLC is a limited liability company having its principal place of business in Escambia County, Florida.

5.      Meraki Solar, LLC and Meraki Installers, LLC are affiliated entities sharing certain common ownership.  At relevant times to this litigation, they shared a number of administrative and operational functions, including accounting and payroll, information technology and marketing. They also occupy the same building, sharing the cost of rent and utilities.

6.      Defendant, Mikol Rosenbalm, currently resides in Utah County, Utah.

7.      Between approximately August 24, 2018, through approximately September 25, 2020, Mikol Rosenbalm ("Rosenbalm") was an employee of Plaintiff Meraki Solar, LLC and/or Meraki Installers, LLC and a resident of Escambia County, Florida.

8.      Most recently, Meraki employed Rosenbalm as Head of Support

to perform business functions and administrative services principally working out of Meraki's offices in the State of Florida.

9.    During her employment with Meraki, Rosenbalm also regularly performed business and administrative functions for Meraki Solar's operations in a number of other states, including, but not limited to, Utah, Colorado, Texas, New Mexico and Arizona.

10.    At certain times, Rosenbalm's responsibilities included opening offices for Meraki Solar in states outside of Florida, providing and coordinating administrative and operational support for those offices, providing support for Meraki Solar sales representatives, coordinating contracts with Meraki Solar sales representatives and district managers and, in some cases, closing and winding up the affairs of such offices.

11.    Rosenbalm registered Meraki Solar, LLC in Utah by preparing, executing and submitting the Foreign Registration Statement (Foreign Limited Liability Company) to the Utah Secretary of State.

12.    During her employment, Meraki Solar, LLC and/or Meraki Installers, LLC employed Rosenbalm pursuant to certain agreements which were entered into in the State of Florida.

13.    Most recently, on or about April 28, 2020, Rosenbalm, entered into an Agreement Regarding Trade Secrets, Confidential Information, Non-

Competition and Non-Solicitation ("Rosenbalm Agreement") with Meraki Installers, LLC, a true and correct copy of which is attached hereto as Exhibit "A."

14.    Additionally, on or about November 27, 2019, Rosenbalm entered into a Mutual Confidentiality and Non-Disclosure Employee Agreement with Meraki Solar, LLC and Meraki Installers, LLC ("Rosenbalm Confidentiality Agreement"), a true and correct copy of which is attached hereto as Exhibit "B."

15.    The Rosenbalm Agreement and Rosenbalm Confidentiality Agreement were executed by the parties thereto in the State of Florida.

16.    Upon information and belief, Defendant Stuart Kirkham currently resides in Utah County, Utah.

17.    From approximately June 24, 2020, through September 25, 2020, Stuart Kirkham ("Kirkham") was engaged as an independent contractor by Plaintiff Meraki Installers, LLC and during that time, was a resident of Escambia County, Florida.

18.    Most recently, on or about June 24, 2020, Meraki Installers, LLC engaged Kirkham to perform sales-related services in the State of Florida as a "Direct Seller" pursuant to a Direct Seller Agreement ("Kirkham Agreement") with Meraki Installers, LLC a true and correct copy of which is

attached hereto as Exhibit "C."

19.    On one or more occasions, Kirkham also performed services for Meraki at its locations outside of the State of Florida.

20.    In approximately August of 2020, Kirkham relocated Meraki Solar's Las Vegas, Nevada office to its location in Springville, Utah.

21.    The Kirkham Agreement was executed by the parties thereto in the State of Florida.

22.    Upon information and belief, Defendant, Desreal Aaron Sandoval, is a resident of El Paso County, Texas.

23.    From approximately October 31, 2018, through September 25, 2020, Desreal Aaron Sandoval ("Sandoval") was engaged as an independent contractor by Plaintiff Meraki Solar, LLC.

24.    Sandoval initially worked for Meraki in Texas and later relocated to Colorado.  Most recently, on or about September 11, 2020, Meraki Solar, LLC engaged Sandoval to perform sales-related services in the State of Colorado as a "District Manager" pursuant to a District Manager Agreement ("Sandoval Agreement") with Meraki Solar, LLC, a true and correct copy of which is attached hereto as Exhibit "D."

25.    The Sandoval Agreement was executed by Meraki Solar in the State of Florida and by Sandoval in the State of Texas.

5

26.    During the period of his engagement, Sandoval entered into certain other written agreements with Meraki Solar, including the Meraki Solar, LLC Direct Seller Agreement with Aaron Sandoval dated March 17, 2020 ("Sandoval 2020 Direct Seller Agreement"), attached hereto as Exhibit "E."

27.    During the period of his engagement, Sandoval attended certain training with Meraki Solar in Escambia County, Florida.

28.    During the period of his engagement, Sandoval regularly communicated via phone, email and text with Meraki Solar's President of Sales and Head of Support, both of whom worked out of Meraki's offices in Escambia County, Florida.

29.    During the period of his engagement, Sandoval, on a regular basis, communicated by phone, email and/or text with Meraki Solar's sales support, customer support and/or its tracking and commission teams, all of which are located in Escambia County, Florida.

30.    During the period of his engagement, Sandoval was provided with certain contracts, policies and other Meraki Solar business documents relating to his work for Meraki Solar which originated at its offices located in Escambia County, Florida.

31.    While working for Meraki Solar, Sandoval also had access to

certain confidential information located in Escambia County, Florida.

32.　During the period of his engagement, Sandoval accessed Meraki Solar's corporate database, "Salesforce Community," which was maintained in Florida by Meraki 's information technology staff, who were located in Florida.

33.　The Rosenbalm, Kirkham and Sandoval Agreements, as well as the Rosenbalm Confidentiality Agreement and the Sandoval 2020 Direct Seller Agreement, each include respective venue provisions providing for venue in Escambia County, Florida.

34.　Based on the foregoing, this Court has personal jurisdiction over Defendants Rosenbalm, Kirkham and Sandoval.

35.　Based on the foregoing, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

36.　Based on the foregoing, venue is proper in Escambia County, Florida.

## **FACTUAL BACKGROUND**

37.　The Rosenbalm Agreement includes a number of restrictive covenants, including the following:

> **3. Solicitation of Meraki Customers, Potential Customers, Independent Contractors and Employees.**  In consideration for employment with Meraki and participation in an Meraki

compensation plan or structure, Employee agrees that for a period of three (3) years following termination of Employee's employment with Meraki for any reason, Employee will not interfere with Meraki's business by directly or indirectly soliciting an employee or independent contractor to leave Meraki's employ, by inducing an independent contractor to sever the relationship with Meraki, or by soliciting business from any of Meraki's Customers or Potential Customers. This three-year limitation is not intended to limit Meraki' s right to prevent misappropriation of its Trade Secrets and Confidential Information beyond the three-year period.

**4. <u>Non-Competition Clause</u>.** Employee shall not, directly or indirectly, and whether or not for compensation, either on his or her behalf or as an officer, employee, independent contractor, agent, consultant, director, owner, partner, shareholder or in any other capacity whatsoever, compete with Meraki for any business, accounts, clients, customers, potential customers or provide referrals to any business similar to or competitive with the services, sales, and products provided by Meraki, within a two hundred (200) mile radius of any office of Meraki or area/location where Employee has offered or sold or provided products or services on behalf of Meraki or any affiliate of Meraki or where Meraki does not have or maintain and office during the period of time that Employee was associated with Meraki or any affiliate of Meraki. Employee agrees not to contact any such business, accounts, independent contractor, clients, customers, potential customers, either directly or indirectly, nor cause or permit any other person, firm or entity to contact such accounts. Breach of this provision shall entitle Meraki to invoke all available remedies at law or in equity, including injunctive relief and liquidated damages. Employee agrees that in the event any business, accounts, independent contractor, clients, customers, potential customers is sold services and/or products similar to those offered by Meraki during the three (3) years following termination of Employee's employment with Meraki, either by Employee or by any other person or entity with whom Employee is affiliated, either directly or indirectly, or as an owner, employee, independent contractor, advisor, investor, shareholder, partner,

or in any other manner whatsoever, the same shall constitute a violation and breach of this covenant not to compete, and Employee shall be responsible for and shall pay damages, including liquidated damages referenced herein, to Meraki.

**9. Injunctive Relief & Damages.** Recognizing the irreparable nature of the injury that could result from Employee's violation of this Agreement it is agreed if there is a breach of the above agreement you agree as a condition of your employment to reimburse Meraki for an amount of Liquidated Damages for the harm caused as a result of your actions. Specifically, for each client, account, independent contractor that transfers or terminates services from Meraki as described in the preceding, you agree and are obligated to pay to Meraki liquidated Damages of two dollars fifty cents ($2.50) for each one dollar ($1.00) of commission revenue of the particular customer/independent contractor or sales payment of commissions and fees to Seller or the company or entity earned on each transaction that Meraki would have earned but for the Employee's breach in violation of this Agreement. Payment of damages shall be made to Meraki within thirty (30) days of the date the Employee services the client, account, independent contractor, or sells related services or products to the client, customer, account, independent contractor. Employee specifically consents to entry of a temporary restraining order, preliminary injunction, or permanent injunction (subject to bond in an amount set by the court), with or without notice requiring compliance with this Agreement.

38. The Rosenbalm Confidentiality Agreement includes confidentiality and non-disclosure covenants as follows:

1. **Confidential Information**. This Agreement shall apply to all "Confidential Information." Confidential Information shall mean all discussions, negotiations and arrangements, policies, procedures, practices, methods, pay-rate, commissions, financing, financers, benefits, and any and all information that is needed to procure, perform, and execute business on and in behalf of Meraki. Employee agrees not to disclose at any time

during the remainder of your associations or thereafter, directly or indirectly, any confidential information, data, trade secrets, proprietary information, confidential customer information, know-ho and related materials.

2. **Non-disclosure**. Recipient agrees to hold the Confidential Information in strict confidence and not to: (I) disclose the Confidential Information to any third party other than those permitted herein, (Ii) use the Confidential Information for any commercial purpose without the prior written permission of the Disclosing Party, (iii) use the Confidential Information for the benefit of anyone other than the parties hereto, or (iv) otherwise use the Confidential Information in a manner detrimental to the Disclosing Party. Recipient shall take commercially reasonable precautions to prevent wrongful disclosure or use of the Confidential Information Recipient may disclose the Confidential information to its partners, directors, officers, employees, attorneys, financial advisors or affiliates with a need-to-know such information (collectively, "Representatives"); provided that such Representatives agree to be bound by and subject to the terms set fore herein, and provided that the recipient shall remain responsible for any breach of the Agreement by its Representatives.

I will not discuss trade information. Trade information is described but not limited to: Customers, sales rep, material providers, install practices, solar procedures, erp procedures, jurisdictions, permitting information, and any and all other functions pertaining to Meraki's solar trade information.

I will not discuss Employee Information. Employee information is described by not limited to: status, pay, bonuses, pay raises, benefits, position, title, relationship, and any and all employee related information.

I will not discuss Sales Rep information. Sales rep information is described by not limited to: sales, rank, position, commission, chargeback, compliance, rep pay adjustments, length of time at the company, and any and all other sales rep related information.

I will not discuss Owner information. Owner information is described by not limited to: Conversations, Status, Communications, and any and all other Owner related information.

39.    The Sandoval Agreement contains a number of restrictive covenants, including the following:

**Section 3(a)  Covenant Not to Compete.** Direct Seller agrees that for a period of three (3) years ("Restricted Period") after termination of Direct Seller's association with Meraki or this Agreement, without regard for the reason, Direct Seller shall not, directly or indirectly, and whether or not for compensation, either on his or her behalf or as an officer, employee, independent contractor, agent, consultant, director, owner, partner, shareholder or in any other capacity whatsoever, compete with Meraki for any business, accounts, clients, customers, potential customers or provide referrals to any business similar to or competitive with the services, sales, and products provided by Meraki, within a seventy five (75) mile radius of any office of Meraki or area/location where Direct Seller has offered or sold products or services on behalf of Meraki where Meraki does not have or maintain and office during the period of time that Direct Seller was associated with Meraki. Direct Seller agrees not to contact any such business, accounts, clients, customers, potential customers, either directly or indirectly, nor cause or permit any other person, firm or entity to contact such accounts. Breach of this provision shall entitle Meraki to invoke all available remedies at law or in equity, including injunctive relief and liquidated damages. Direct Seller agrees that in the event any business, accounts, clients, customers, potential customers is sold services and/or products similar to those offered by Meraki during the effective term of this Agreement within three (3) years of the termination of this Agreement, either by Direct Seller or by any other person or entity with whom Direct Seller is affiliated, either directly or indirectly, or as an owner, employee, independent contractor, advisor, investor, shareholder, partner,

or in any other manner whatsoever, the same shall constitute a violation and breach of this covenant not to compete, and Direct Seller shall be responsible for and shall pay damages to Meraki.

**Section 4(a)   Non-Solicitation.** During the Restricted Period, Direct Seller and anyone associated or affiliated with Direct Seller shall not, whether now existing or later created, to, directly or indirectly, hire or solicit any person who is offered employment by Meraki, regardless of whether that person was an employee or independent contractor, during the Restricted Period, or encourage any such employee, independent contractor or anyone associated with Meraki to leave such employment or association with Meraki or hire any such person who has left such employment or terminated its association with Meraki, except pursuant to a general solicitation which is not directed specifically to any such employees; *provided, that* nothing in this **Section 4 (a)** shall prevent Direct Seller from hiring any employee whose employment has been terminated by Meraki after one hundred eighty (180) days from the date of termination.

40.    The Kirkham Agreement contains a number of restrictive covenants, including the following:

**19. NON-COMPETITION,     CONFIDENTIALITY,     NON-SOLICITATION AND NON-DISCLOSURE AGREEMENT.**

Covenant Not to Compete. Seller agrees that for a period of three (3) years after termination of this Agreement, for any reason, Seller shall not compete with MERAKI for any business or accounts which were clients of Meraki, serviced by Meraki or active prospective clients of Meraki, on the date of such termination. Seller shall not, directly or indirectly, and whether or not for compensation, either on his or her behalf or as an officer, employee, independent contractor, agent, consultant, director, owner, partner, shareholder or in any other capacity whatsoever, compete with Meraki for any business, accounts, clients, customers, potential customers or provide referrals to any business similar to or competitive with the services, sales, and

products provided by Meraki, within a two hundred (200) mile radius of any office of Meraki or area/location where Seller has offered or sold products or services on behalf of Meraki or any affiliate of Meraki or where Meraki does not have or maintain and office during the period of time that Seller was associated with Meraki or any affiliate of Meraki. Seller agrees not to contact any such business, accounts, clients, customers, potential customers, either directly or indirectly, nor cause or permit any other person, firm or entity to contact such accounts. Breach of this provision shall entitle Meraki to invoke all available remedies at law or in equity, including injunctive relief and liquidated damages. Seller agrees that in the event any business, accounts, clients, customers, potential customers is sold services and/or products similar to those offered by Meraki during the effective term of this Agreement within three (3) years of the termination of this Agreement, either by the Seller or by any other person or entity with whom Seller is affiliated, either directly or indirectly, or as an owner, employee, independent contractor, advisor, investor, shareholder, partner, or in any other manner whatsoever, the same shall constitute a violation and breach of this covenant not to compete, and the Seller shall be responsible for and shall pay damages to Meraki.

Seller agrees not to contact any such accounts, either directly or indirectly, nor cause or permit any other person, firm or entity to contact such accounts. Breach of this provision shall entitle Meraki to invoke all available remedies at law or in equity, including injunctive relief and liquidated damages. Seller agrees that in the event any business or accounts that were Meraki's clients during the effective term of this Agreement, are serviced within three (3) years of the termination of this Agreement, either by the Seller or by any other person or entity with whom Seller is affiliated, either directly or indirectly, or as an owner, employee, associate, advisor, investor, shareholder, partner, or in any other manner whatsoever, the same shall constitute a violation and breach of this covenant not to compete, and the Seller shall be responsible for and shall pay damages Meraki.

<u>Non-Solicitation</u>.  In  the  event  of  termination  of  Seller's

independent-contractor relationship with MERAKI, with or without cause, and for a period of three (3) years from the date of termination of the independent-contractor relationship, Seller will not directly or indirectly engage in the following conduct, nor will Seller aid, abet, assist, encourage, or influence others to do so: Induce of attempt to induce, solicit or attempt to solicit, or encourage or attempt to encourage, in any capacity, on Seller's behalf or on behalf of any other firm, person, or entity,

(a) any current or former customer of MERAKI (herein after defined as "MERAKI Customer") to terminate their contract with MERAKI or any other entity, or to allow their contract to be cancelled, not renewed, or to enter into a contract with another company, or

(b) any current or former Seller, employee, or contractor of MERAKI to terminate their relationship with MERAKI or work for any entity that competes with MERAKI. Seller acknowledges and agrees that the names, addresses, product specifications, and information regarding MERAKI Customers and MERAKI Sellers and employees constitute Proprietary Information and that the sale or unauthorized use or disclosure of this or any other Proprietary Information that Seller obtained during the court of this Agreement would constitute unfair competition. Seller promises not to engage in any unfair competition with MERAKI either during the term of his/her independent-contractor relationship or at any time thereafter. It is agreed that in the event that Seller violates this agreement and MERAKI is required to enforce its rights under this Section, MERAKI will be entitled, in addition to an award of damages, to its reasonable actual attorney fees and costs incurred.

41.   The Sandoval 2020 Direct Seller Agreement provides for Sandoval's prompt repayment of all advances within 30 days after termination of the agreement as follows:

**In the event of termination of the Agreement, either voluntary or involuntary, any advances (commission pre-**

**payments), paid before completion of the project and Meraki has been paid in full or the project receiving a PTO from the utility company, Seller shall immediately and without further action become obligated to return the advances to Meraki, or Meraki may elect to offset all such advances against any other amounts owed by Meraki to Seller hereunder, whether earned commission or otherwise.** Seller will pay back all advances to Meraki within 30 days of the termination of this Agreement.

* * *

In the event that Meraki employs an[] attorney for collection of sums advanced, Meraki shall be entitled to its reasonable actual attorney fees and costs incurred to recover the sums advanced to Seller.

42.    During the period of his engagement with Meraki, it paid him advances on certain projects that had not been completed.

43.    On or about September 9, 2020, Rosenbalm resigned her employment with Meraki, effective September 25, 2020.

44.    On or about September 25, 2020, Kirkham informed Meraki Installers, LLC that he sought to end his independent contractor relationship with Meraki Installers, LLC.

45.    On or about September 18, 2020, Sandoval informed Meraki Solar, LLC that he sought to end his independent contractor relationship with Meraki Solar, LLC, effective immediately.

46.    Since ending his relationship with Meraki, Sandoval has failed to repay any of the advances made to him by Meraki on projects that were not

completed.  These advances total approximately $90,000.00.

47.    Plaintiff Meraki Solar, LLC maintains, and at relevant times has maintained, offices at 4320 South Broadway, Denver, Colorado and 478 S. West Frontage Road, Suite 105, Springville, Utah.  In addition, Meraki Solar, LLC maintains offices at the following locations:

21 N Warrington Road
Pensacola, FL  32506

2343 Hansen Lane, Ste 3
Tallahassee, FL

845 Ore Mill Road, #4
Colorado Springs, CO

5773 N. Academy Blvd.
Colorado Springs, CO

900 S. Valley View Blvd., Ste 185
Las Vegas, NV

5901 Pan American Freeway, Suite D1
Albuquerque, NM 87109

11130 Lomas Blvd, Ste F5
Albuquerque, NM 87112

10131 Coors Blvd, Ste G2
 Albuquerque, NM 87114

1630 Hickory Loop, Suite G
Las Cruces, NM 88005

720 St Michaels Drive, Suite P
Santa Fe, NM 87505

5281 N 23rd St
McAllen, TX 78504

287 South Darrington Rd, Unit 6
Horizon City, TX 79928

3945 Doniphan Park Circle, Suite D
El Paso, TX 79922

7575 W Peoria Ave, Ste A102
Peoria, AZ 85345

48.    Plaintiff Meraki Installers, LLC maintains, and at relevant times

has maintained, several offices in Pensacola as well as offices at the

following locations:

1863 N. Highland Ave.
Clearwater, FL

1812 S. Highway 77, Ste. 106
Lynn Haven, FL

2810 Sharer Rd., Ste 10
Tallahassee, FL

4507 Furling Lane, Ste. 114
Destin, FL

11951 International Dr. S, Ste. 2A1 2A2
Orlando, FL

5730 Central Florida Pkwy
Orlando, FL

49.    Meraki Installers also has several warehouse/office locations in

Florida as well as at 1350-1360 W. Littleton Blvd., Unit F, Littleton, Colorado and 2813 Zinnia Ave., McAllen, Texas.

50.     On or about September 20, 2020, Kirkham filed or caused to be filed Articles of Organization for a Colorado Limited Liability Company, Pur Energy, LLC, with an effective date of September 27, 2020.

51.     In approximately October 2020, Rosenbalm, Kirkham and Sandoval began operating and/or working for the new solar company, which was established by Rosenbalm and Kirkham.

52.     The solar company that Rosenbalm formed or helped form along with Kirkham is Pur Energy, LLC, where Rosenbalm continues to work along with Kirkham and Sandoval.

53.     Since its formation, Pur Energy has engaged or hired a number of individuals who previously worked as "Direct Sellers," or sales representatives for Meraki Solar, LLC including the following:

Feliz Garcia
Adolph Alvarado
Jacob Vasquez
James Sweeney
Ashley Nassif
Caroline Wagner
Christian Roberts
Colton Austin
Demetria Davis
Devin Williams
Dylan Pontene

Justin Rickett
Maria Salcedo
Nubia Palomino
Recola Finch
Seth Shimberg
Sonja Broker

54.    Defendant Sandoval has solicited one or more of these sales representatives, or caused to be solicited by Pur Energy, to end their relationships with Meraki and enter into engagements or employment with Pur Energy.

55.    As represented on the company website, Pur Energy, LLC, is a solar and sustainability consulting business headquartered in Denver, Colorado.

56.    Sandoval works for Pur Energy, LLC as Vice President of Sales and has a 40% ownership interest in Pur Energy.

57.    Upon information and belief, Pur Energy has opened additional offices, including in Santa Fe and Albuquerque, New Mexico.

58.    At relevant times, Pur Energy's website has indicated that it has offices in Texas in addition to Colorado, New Mexico and Arizona.

59.    Sandoval has represented through social media that Pur Energy services Denver and Colorado Springs, Colorado, El Paso, Texas, Albuquerque, New Mexico and Provo, Utah.

60.    On or about June 3, 2021, Defendant Rosenbalm registered Helios Energy Solutions Corporation, a new solar business, with the Utah Secretary of State, Division of Corporations.

61.    On or about June 8, 2021, Defendant Sandoval, by or through a third party, registered Elevate Energy ELP LLC, a new solar business, with the Texas Secretary of State.

62.    Pur Energy, Helios Energy Solutions Corporation and Elevate Energy ELP LLC, are direct competitors of Meraki.

63.    During the period of their respective employment and/or engagement with Plaintiffs, Defendants acquired Plaintiffs' confidential business information, including but not limited confidential sales, marketing operational and customer information.

64.    Since their employment and/or engagement with Plaintiffs ended, Defendants have used and continue to use such confidential information to unfairly and improperly compete with Plaintiffs.

65.    By way of example, on or about January 14, 2021 Rosenbalm accessed Meraki's Google Docs database and modified/appropriated certain parts of its Solar Process form document to be used by Pur Energy in conducting its business.

66.    Upon information and belief, Rosenbalm also misappropriated a

motivational sales sign stating FU*K AVERAGE, BE LEGENDARY, that is the property of Meraki, which she has used in connection with her work for Pur Energy.  Pictures posted on Sandoval's Facebook site on or about February 8, 2021 show that the sign is hanging on the wall of one of Pur Energy's offices.

67.    Defendants, on behalf of Pur Energy, LLC, and/or individually have directly, or indirectly through Pur Energy personnel and/or other third parties, knowingly and improperly/unfairly solicited Plaintiffs' customers and have otherwise competed and continue to complete with Plaintiffs.

68.    Sales representatives employed or engaged by Pur Energy have specifically targeted contracts and business relationships between Meraki and its customers for solicitation on behalf of Pur Energy.

69.    Sandoval has posted video testimonials featuring a Meraki customer, Wally Goodwin, on the Pur Energy, LLC website in which Sandoval misrepresents in one of the videos, through implication/omission, that Mr. Goodwin is a satisfied Pur Energy customer who "sends [Sandoval] tons of customers."

70.    In another video that was posted on Pur Energy, LLC's website with Mr. Goodwin, Sandoval is wearing a hat and jacket bearing the Meraki logo, reflecting that the video was procured while Sandoval was working on

behalf of Meraki.

71.    Sandoval has never obtained permission or authorization from Meraki to use the Meraki trade name/logo to solicit business for Pur Energy, LLC.

72.    As a result of Defendants' conduct described above, customers of Meraki, who had entered into contracts and/or business relationships with Meraki for the purchase of goods and services, informed Meraki that they were cancelling their contracts with Meraki or otherwise ending their business relationships with Meraki.  Said customers, who reside within 75 miles of Meraki offices in Colorado, Utah, New Mexico, Arizona and/or Texas, subsequently purchased similar goods and services from Pur Energy, LLC/Defendants in those same geographic areas as a result of solicitations and unfair competition by Defendants.

73.    On or about October 6, 2020, after the separation of her employment with Meraki, which was effective approximately September 25, 2020, Rosenbalm, using confidential banking information acquired during her employment with Meraki and while working in Florida, withdrew $5,000.00 from Meraki Installers LLC's Wells Fargo account without authorization, approval or consent from Meraki.

74.    The Meraki Installers, LLC's business account with Wells Fargo

was established at a Wells Fargo Bank branch located in Pensacola, Escambia County, Florida.  The funds that Rosenbalm withdrew were drawn from Meraki Installers, LLC's account located in Escambia County, Florida.

**COUNT I**
**BREACH OF CONTRACT (ALL DEFENDANTS) BASED ON THE**
**ROSENBALM AGREEMENT, ROSENBALM CONFIDENTIALITY**
**AGREEMENT, KIRKHAM AGREEMENT AND SANDOVAL AGREEMENT**

75.    Plaintiffs hereby reincorporate and reallege Paragraphs 1 through 74 above as if fully set forth herein.

**A.    Breach of Confidentiality Covenants**

76.    Beginning in or around September 2020, and continuing to the present date, Defendants, without claim of right or authority, appropriated for their own use, Plaintiffs' proprietary and confidential information in breach of their respective agreements with Plaintiffs.

77.    As a direct and proximate result of Defendants' appropriation of Plaintiffs' proprietary and confidential information, Plaintiffs have been deprived of the use and possession of their property and have been caused and continue to suffer irreparable injury, loss, and damages.

**B.    Breach of Non-Compete Covenants**

78.    Beginning on or around September 20, 2020, and continuing to the present date, Defendants, individually and jointly, have actively engaged

23

in direct competition with the business of Plaintiffs in breach of their respective agreements with Plaintiffs.

79.    As a result of Defendants unfairly and wrongfully engaging in direct competition with the business of Plaintiffs, Plaintiffs have experienced loss of profits and business revenues and other damages.

### C.    Breach of Non-Solicitation Covenants

80.    On or around September 20, 2020, and continuing to the present date, Defendants, individually and/or in concert with each other and/or other Pur Energy personnel, have actively solicited Plaintiffs' customers in breach of their respective agreements with Plaintiffs.

81.    Defendant Sandoval individually and/or in concert with the Co-Defendants and/or other Pur Energy personnel has (or have) also solicited Plaintiffs' sales representatives to end their relationships with Meraki and enter into engagements or employment with Pur Energy and aided and abetted them in breaching their non-compete and other restrictive covenants with Meraki.

82.    As a result of Defendants actively soliciting Plaintiffs' customers and Defendant Sandoval soliciting Plaintiffs' sales representatives, Plaintiffs have suffered and will continue to suffer irreparable injury, loss, and damages.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in favor of Plaintiffs and against Defendants and awarding the following relief to Plaintiffs:

a.    A permanent injunction, prohibiting Defendants from using any of the proprietary and confidential information of Plaintiffs in the future and requiring Defendants to abide by the non-competition and non-solicitation covenants contained in their respective Agreements under the terms set forth therein but extending from the date of judgment.

b.    Monetary damages for all monetary losses and damages (including lost profits, business revenues, interest, costs and restitution) caused by Defendants' breaches of the Agreements.

c.    An accounting in equity.

d.    Costs and reasonable attorney's fees.

e.    Such other and further relief as this Court deems just and proper.

**COUNT II**
**BREACH OF CONTRACT (SANDOVAL)**
**BASED ON THE SANDOVAL 2020 DIRECT SELLER AGREEMENT**

83.    Plaintiffs hereby reincorporate and reallege Paragraphs 1 through 74 above as if fully set forth herein.

84.    During the period of his engagement as a Direct Seller and

District Manager, Meraki paid Sandoval on a commission basis and paid him advances on certain such commissions prior to completion of the projects and prior to Meraki Solar being paid in full or the project receiving a "Permission to Operate" from the utility company.

85.    After Sandoval ended his contractor relationship with Meraki, a number of projects for which Sandoval had been paid advances had not been and were not completed.   These advances total approximately $90,000.00.

86.    To date, Sandoval has failed to repay to Meraki any of the sums advanced to him for projects that were not completed.

87.    Sandoval's failure to repay these sums to Meraki constitutes a breach of contract which has resulted in monetary damages to Meraki.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in favor of Plaintiffs and against Defendant Sandoval and awarding the following relief to Plaintiffs:

a.    Monetary damages for all monetary losses and damages (including lost profits, business revenues, interest, costs and restitution) caused by Defendant Sandoval's breaches of the Agreements.

b.    Costs and reasonable attorney's fees.

26

c.    Such other and further relief as this Court deems just and proper.

**COUNT III**
**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS**

88.    Plaintiffs hereby reincorporate and reallege Paragraphs 1 through 74 above as if fully set forth herein.

89.    Plaintiffs had contracts with their customers and business relationships evidenced by an understanding with their customers that Plaintiffs would provide goods, services and support when needed in exchange for remuneration.   Through these contracts and business relationships, Plaintiffs had existing and/or prospective legal and/or contractual rights.

90.    Defendants had knowledge of the contracts and business relationships that Plaintiffs enjoyed with their customers.

91.    Defendants intentionally, improperly and without privilege or justification interfered with these contracts and relationships by, among other things, using Meraki's confidential business information.

92.    Defendants' actions were unjustified, improper, malicious and were intended to cause injury and damage to Plaintiffs' business relationship with their clients.

93.    As a result of Defendants' tortious interference with the contracts

and business relationships that Plaintiffs enjoyed with their customers, Plaintiffs lost customers and otherwise have suffered, and continue to suffer irreparable injury, losses and damages.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against Defendants, awarding the following relief to Plaintiffs:

a.    A permanent injunction, prohibiting Defendants from continuing to tortiously interfere with Plaintiffs' contracts and business relationships.

b.    Monetary damages for all pecuniary losses and damages (including lost profits, business revenues, interest, costs and restitution) caused by Defendants' tortious conduct.

c.    An accounting in equity.

d.    An award of costs against Defendant.

e.    Such other and further relief as this Court deems just and proper.

### COUNT IV
### INJUNCTION

94.    Plaintiffs hereby reincorporate and reallege paragraphs 1 through 74 above as if fully set forth herein.

95.    Defendants, through their actions in converting and/or

appropriating Plaintiffs' proprietary and confidential information for their own use or in sharing or disclosing such information to direct competitors, has or will deprive Plaintiffs of the use, possession and benefit of their property and, as a result, Plaintiffs have suffered and will continue to suffer irreparable injury in addition to losses and damages.

96.    Defendants, through their actions in unfairly and wrongfully engaging in direct competition with the business of Plaintiffs, have caused and (if not enjoined) will continue to cause Plaintiffs to experience irreparable injury in addition to losses and damages.

97.    Defendants, through their actions in actively soliciting Plaintiffs' customers and sales representatives, have caused Plaintiffs to suffer and (if not enjoined) will continue to cause Plaintiffs to suffer irreparable injury in addition to losses and damages.

98.    Additionally, Defendants' actions in tortiously interfering with Plaintiffs' business relationships with its clients have caused Plaintiffs to suffer and (if not enjoined) will continue to cause Plaintiffs to suffer irreparable injury in addition to losses and damages.

99.    Unless Defendants are enjoined from engaging in the foregoing conduct by the Court, the likelihood of continued irreparable harm to Plaintiffs is great.

100.   Injunctive relief is appropriate because Plaintiffs do not have any adequate remedy at law.

101.   Based on the facts and circumstances as more particularly set forth in the allegations above, there is a substantial likelihood of success on the merits by Plaintiffs.

102.  Injunctive relief under the facts and circumstances set forth above would serve the public interest by deterring the misappropriation of confidential, proprietary information, by preserving the integrity of business relationships and by preventing unfair competition.

WHEREFORE, in addition to all of the other remedies requested above, Plaintiffs respectfully request that this Court enter judgment, including a permanent injunction, prohibiting Defendants from using any of the proprietary and confidential information of Plaintiffs in the future, requiring Defendants to abide by the confidentiality, non-competition and non-solicitation covenants contained in their respective Agreements under the terms set forth therein but extending the time periods set forth therein from the date of judgment, preventing Defendants from tortiously interfering with Plaintiffs' business relationships and awarding such other and further injunctive relief as the Court deems just and proper.

Respectfully submitted,

*/s/Erick M. Drlicka*
_____

Erick M. Drlicka
Florida Bar No.  712541
EMMANUEL, SHEPPARD & CONDON
30 S. Spring Street
Pensacola, FL  32502
(850) 433-658
**Primary E-mail**:
emd@esclaw.com
**Secondary E-mail**:
promero@esclaw.com
frb@esclaw.com
Attorneys for the Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 30th day of June, 2021, a true copy of

the foregoing was filed electronically with the Clerk of the Court by using the

CM/ECF System which will send notice of electronic filing to the following:

Charles Wiggins
Beggs & Lane, RLLP
501 Commendencia Street
Pensacola, FL 32502
ctw@beggslane.com (primary)
amn@beggslane.com (secondary)

Steven R. Sumsion
Sumsion Business Law
3651 N 100 E, Suite 300
Provo, UT 84604
steve@businesslawutah.com

*/s/Erick M. Drlicka*
_____

Erick M. Drlicka
Florida Bar No. 712541